UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROLYN PORTER, | |
| Plaintiff, | No. 23 C 1328 |
| v. | Judge Thomas M. Durkin |
| SCOTT SPORTS SA; SCOTT USA, INC.; SR SUNTOUR, INC; SR SUNTOUR NORTH AMERICA, INC.; AND RECREATIONAL EQUIPMENT, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Carolyn Porter brings this suit in connection with injuries she allegedly sustained while riding a bicycle manufactured and/or sold by Defendants. SR Suntour, Inc. ("SRS") moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process. *See* R. 43. SR Suntour North America, Inc. ("SSNA") separately moves to dismiss pursuant to Rule 12(b)(2). *See* R. 23. For the following reasons, SRS's motion is granted in part and denied in part, and SSNA's motion is granted.

**Background**

On July 21, 2022, Porter was riding her Scott Sportster 55 Lady Hybrid bicycle with a NEX Suntour front fork ("front fork") when the front wheel dislodged and caused her to fall and sustain injuries to her head, hands, and wrists. R. 1 ¶¶ 15, 17–19. Porter had purchased her bicycle, which came equipped with the front fork, on June 30, 2012 at Recreational Equipment, Inc. ("REI") in Schaumburg, Illinois. *Id.* ¶

1

15. The bicycle was manufactured by Scott Sports, SA ("Scott"), and the front fork was manufactured by SRS. *Id.* ¶¶ 15, 29.

Porter filed a complaint alleging strict and negligent product liability claims under Illinois law against Scott, Scott USA, Inc., SRS, SSNA, and REI. Relevant here, SRS is incorporated and has its principal place of business in Taiwan. *Id.* ¶ 5. Porter alleges on information and belief that SRS directed and contractually controlled the design, manufacturing, testing, marketing, supply, and distribution of the front fork and conducted business in the United States, including in Illinois, by exporting and distributing its parts to the U.S. market through its subsidiary, SSNA. *Id.* SSNA is incorporated and has its principal place of business in Washington. *Id.* ¶ 6. Porter alleges that SSNA marketed, supplied, and sold the front fork and other products through authorized retail sellers and to bicycle distributors, manufacturers, and assemblers in the United States, including in Illinois. *Id.*

SRS moves to dismiss under Rules 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process, and SSNA moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

## Discussion

I.     Service under Rule 4(f)

A defendant may move to dismiss under Rule 12(b)(5) for insufficient service of process. When a defendant files a Rule 12(b)(5) motion, the plaintiff bears the burden to prove that the defendant was properly served. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Where the plaintiff has not met this burden, the district court "must either dismiss the suit or specify a time within which the plaintiff

must serve the defendant." *Id.* (citing Fed. R. Civ. P. 4(m)). A court's decision on a Rule 12(b)(5) motion is "inherently discretionary." *Id.* In ruling on a Rule 12(b)(5) motion, a court may consider affidavits and other documentary evidence. *See Paulsen v. Abbott Lab'ys*, 368 F. Supp. 3d 1152, 1163 (N.D. Ill. 2019) (citations omitted).

SRS argues that service of process was insufficient in this case. Before a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Rule 4(h)(2) provides for service of a foreign corporation "in any manner prescribed by Rule 4(f) for serving individuals, except personal delivery under (f)(2)(c)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f)(1) provides that an individual may be served outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice" like the Hague Convention. Fed. R. Civ. P. 4(f)(1). If Rule 4(f)(1) does not apply, Rule 4(f)(2) allows service by "a method reasonably calculated to give notice," such as a letter rogatory. Fed. R. Civ. P. 4(f)(2). And Rule 4(f)(3) allows alternative service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Alternative service is "neither a last resort or extraordinary relief," but simply one means of enabling service of process on an international defendant. *In re Paraquat Prod. Liab. Litig.*, No. 3:21-MD-3004-NJR, 2021 WL 4775284, at *3 (S.D. Ill. Oct. 13, 2021) (citation omitted).

Porter sought—and the Court granted—leave for alternative service under Rule 4(f)(3). *See* R. 37. Specifically, the Court allowed Porter to serve SRS via public

3

mail, email, and facsimile at its headquarters in Taiwan and by email to SRS's United States-based counsel in this district. *Id.* On July 6, 2023, Porter effected service consistent with the Court's order. *See* R. 38. SRS contends that allowing alternative service rendered Rules 4(f)(1) and (f)(2) superfluous and contravened Taiwanese law. In effect, SRS asks this Court to reconsider its prior ruling granting alternative service.

The Court committed no manifest error of law that warrants reconsideration. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (explaining that a motion to reconsider "may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available"). As SRS recognizes, "the decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (citations omitted). Here, Porter sought alternative service after more than three months of trying to serve SRS. *See* R. 36. Indeed, SRS was aware of the present suit but refused to accept service by means outside of letter rogatory under Rule 4(f)(2) unless Porter voluntarily dismissed SSNA from the suit. *See* R. 36-2.[1] But service by letter rogatory would have been unduly expensive and time-consuming, costing Porter thousands of dollars and potentially delaying the case for up to a year. *See* R. 36-1 ¶ 7. The Court was well within its discretion to allow alternative service under Rule 4(f)(3) on that basis. *See* Fed. R.

---

[1] SRS recognizes that because it is a Taiwanese corporation that is not subject to the Hague Convention, Rule 4(f)(1) was inapplicable.

Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action"). To the extent that the single, non-binding case cited by SRS holds differently, this Court respectfully disagrees. *See Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 880 (N.D. Cal. 2011). Moreover, nothing in Rule 4(f)(3) requires that the alternative service ordered by the Court pursuant to that provision must comply with the law of the foreign state where the service is to be effected. *See Strabala*, 318 F.R.D. at 115 n.38. The method of service does not warrant dismissal or quashing service here.

  II.  Personal Jurisdiction

A defendant may move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. A plaintiff need not allege personal jurisdiction in the complaint. *Curry v. Revolution Laby's., LLC*, 949 F.3d 385, 392 (7th Cir. 2020). But once a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When, as here, a court rules on a Rule 12(b)(2) motion based on the parties' written submissions without holding an evidentiary hearing, the plaintiff need only make out a *prima facie* case for personal jurisdiction. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research Found.*, 338 F.3d at 782 (quoting *Nelson by Carson v. Park Indus., Inc.*, 717

F.2d 1120, 1123 (7th Cir. 1983)). However, when a defendant challenges an alleged fact by filing an affidavit or other evidence, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783; *see also Sorsby v. TruGreen Ltd. P'ship*, No. 20-cv-2601, 2020 WL 7641288, at *2 (N.D. Ill. Dec. 23, 2020).

Both SRS and SSNA contest personal jurisdiction. There are two types of personal jurisdiction: specific and general. Porter does not argue that this Court has general jurisdiction, so the Court considers only whether there is specific jurisdiction. Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). There are three requirements:

> [F]irst, defendants must have purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business in the forum; second, the alleged injury must arise out of or relate to the defendants' forum-related activities; and third, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*In re Sheehan*, 48 F.4th 513, 522 (7th Cir. 2022), *cert. denied sub nom. Sheehan v. Breccia Unlimited Co.*, 143 S. Ct. 1750 (2023) (citations omitted).

Both SRS and SSNA supplied affidavits in support of their motions setting forth specific facts about the entities' operations and their relationship to Illinois. *See* R. 23-2 (first affidavit from SSNA Owner and Operations' Manager); R. 35-1 (second affidavit from SSNA Owner and Operations' Manager); R. 45-1 (affidavit from SRS's Legal Manager). Those affidavits largely refute the facts supporting jurisdiction alleged in the complaint. *See, e.g.*, R. 1 ¶¶ 5–6, 11–12. Because Porter has not rebutted

6

the affidavits with affirmative evidence of her own, the facts set forth in the affidavits are accepted as true and cited in the analysis that follows.[2]

    a. SRS

Beginning with SRS, the first question is whether SRS has purposefully availed itself of doing business in Illinois or purposefully directed its commercial activity at Illinois. SRS is not registered to do business in Illinois, nor does it have any facilities or personnel in the State. R. 45-1 ¶¶ 14–17. It has not entered any contract with an Illinois resident or requiring performance in Illinois since 2010, does not sell its products to retailers or customers in Illinois, and has not shipped any products to individuals or businesses in Illinois. *Id.* ¶¶ 21–23.

Porter nonetheless asserts that SRS purposefully directed its activities at Illinois by placing its products into the stream of commerce. The Seventh Circuit applies the stream of commerce theory, as articulated in in *World-Wide Volkswagen*, as a way of satisfying the purposeful-availment/purposeful-direction requirement in products liability cases. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This is despite other circuits splitting on the viability and contours of the theory, and the lack of clear resolution by the Supreme Court. *Id.* (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)). Under the stream of commerce theory, specific

---

[2] While Porter has provided screen captures of the SRS and SSNA websites, SRS and SSNA admit that the websites contain (or previously contained) the stated representations.

jurisdiction "may be appropriate over 'a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" *Id.*; *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ("If a defendant delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state, that defendant may be subject to specific jurisdiction in the forum state."); *Morris v. Daimler Trucks North America, LLC*, No. 20-cv-246, 2020 WL 4436330, at *4 (S.D. Ill. Aug. 3, 2020) (stating courts in the Seventh Circuit still apply the "less stringent" stream of commerce theory in products liability cases, meaning, "if a products liability defendant in a court in Illinois is aware and expects its product to be marketed and regularly sold in Illinois in the stream of commerce, it will be subject to personal jurisdiction in Illinois."). By way of example, the Seventh Circuit found personal jurisdiction in a products liability suit where a defendant sold fireworks to a middleman "with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce." *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946–47 (7th Cir. 1992).

The record here does not reflect that SRS was aware or expected that its products would reach Illinois customers. SRS attests that it manufactures its component parts, like the front fork, in factories located in Taiwan, China, and Vietnam. R. 45-1 ¶ 4. SRS does not sell those parts directly to retail customers like Porter, to retailers like REI, or even to bicycle manufacturers like Scott. *Id.* ¶¶ 6–7. Instead, a bicycle manufacturer sends its specification sheet to an assembler, who

8

then purchases the requisite parts from SRS. *Id.* In other words, SRS makes and delivers the parts from its factories in Asia to assemblers, who supply the parts to bicycle manufacturers, who supply the bicycle to retailers, who sell the bicycle to consumers. SRS's involvement in the supply chain stops at supplying the parts to assemblers. It does not play any role in the design, manufacture, assembly, distribution, or sale of the bicycle. *Id.* ¶ 10. It also does not accept service or warranty requests in the United States. *Id.* ¶ 24. It makes sense then that SRS does not know or control where bicycles containing its parts are shipped within the United States, what retailers they are sold to, or who purchases the bicycles. *Id.* ¶ 12.

To be sure, SRS may have been aware that by selling the parts to assemblers who may supply the parts to United States-based manufacturers, the parts may have made their way into bicycles somewhere in the United States, such as in Illinois. But that connection depends on the "unilateral activity" of the assemblers, bicycle manufacturers, and retailers. *See World Wide Volkswagen*, 444 U.S. at 298 (while it was foreseeable that customers who purchased cars sold by World-Wide and Seaway in New York, New Jersey, and Connecticut may drive them to Oklahoma, that unilateral activity did not satisfy minimum contacts in Oklahoma); *McAdams v. Shindong Indus. Co. Ltd.*, No. 18-cv-2199, 2019 WL 6327193, at *7 (S.D. Ill. Nov. 26, 2019) (dismissing products liability action against South Korean manufacturer of front-end loader where United States-based seller exclusively controlled distribution of the product). Moreover, even if the assemblers to whom SRS sold its products were located in the United States, state lines matter in the jurisdictional inquiry. *See*

9

*Jennings*, 383 F.3d at 551 (plaintiff failed to establish that foreign manufacturer who sold goods to a United States-based distributor had sufficient contacts with Indiana specifically) (citing *World Wide Volkswagen*, 444 U.S. at 293); *see also Forde v. Arburg GmbH + Co KG*, No. 20-CV-02904, 2021 WL 148877, at *6 (N.D. Ill. Jan. 15, 2021) (that German company knew the machine it sold to a Connecticut-based middleman may have ended up somewhere else in the United States did not confer jurisdiction in Illinois under the stream of commerce theory).[3]

Porter also argues because SSNA is a United States-based subsidiary of SRS, its contacts should be imputed to SRS. In particular, Porter highlights SSNA's website listing authorized dealers in Illinois. Because, for the reasons stated in the section that follows, this Court finds that it has no specific jurisdiction over SSNA, this argument is unavailing, and Porter has not met her burden of establishing a *prima facie* case of specific jurisdiction as to SRS.

    b. SSNA

SSNA does not contest purposeful availment/purposeful direction. Although SSNA is not registered to do business in Illinois and does not have any facilities, personnel, or contractual relationships with entities or individuals in the State, there are three independent retailers in Illinois that sell aftermarket component parts and

---

[3] Porter alleges in her complaint that the Court has jurisdiction due to SRS's dealings with an entity called LEXCO Bike located in Norridge, Illinois. R. 1. ¶ 11. SRS acknowledges that its website previously listed LEXCO Bike, but attests that SRS has not conducted any business in Illinois since the last purchase from LEXCO Bike thirteen years ago, *see* R. 45-1 ¶ 20, which was two years before Porter purchased her bicycle. Porter does not offer any argument in response to SRS's motion on this point.

10

sell and service bicycles with parts manufactured by SRS and other Suntour entities: Bushwacker in Peoria, Illinois and Bike N Hike in Effingham, Illinois and Charleston, Illinois. R. 23-2 ¶¶ 4–5, 8–9. SSNA identifies these retailers on its website as "authorized dealers." *Id.* ¶ 8; R. 27-2. From January 1, 2021 through January 31, 2023, SSNA made $36,325 in sales in Illinois, which constituted approximately 1% of its global sales, and had 31 warranty claims in Illinois, which was 1.94% of all claims in the United States. R. 23-2 ¶¶ 10–11.

The next question, then, is whether Porter's claims "arise out of or relate to" SSNA's Illinois contacts. Here, Porter does not allege that she purchased or serviced her bicycle or the front fork at any of the three authorized dealers. Instead, Porter alleges that she purchased her bicycle from REI in Schaumberg, Illinois, and that the bicycle came already equipped with the front fork. R. 1 ¶ 15. And SSNA does not have any relationship with Scott Sports or REI. R. 23-2 ¶ 12. Even so, Porter asserts that her injuries from the allegedly defective front fork "relate to" SSNA's sales of after-market SRS component parts through authorized dealers in Illinois. She relies on *Ford Motor Co. v. Montana Eighth Judicial District Court*, wherein the Supreme Court held that Montana and Minnesota courts could exercise specific jurisdiction over Ford even though the particular cars that injured the plaintiffs were designed, manufactured, and first sold outside of those states. 141 S. Ct. 1017, 1026 (2021). Examining the "arise out of or relate to the defendant's contacts" language, the Court explained the back half "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* Yet, "the phrase 'relate to' incorporates

11

real limits, as it must to adequately protect defendants foreign to a forum." *Id.* ("That does not mean anything goes."). Because Ford had "systematically served" the Montana and Minnesota markets by advertising, selling, and servicing for many years "the very vehicles that the plaintiffs allege malfunctioned and injured them," there was a "strong" relationship between the defendant, the forum, and the litigation. *Id.* at 1028.

But unlike in *Ford*, SSNA has never sold or serviced any warranty claim for the very product that Porter alleges malfunctioned and injured her, the front fork, in Illinois. R. 35-1 ¶¶ 5–6. Given these facts, while SSNA's contacts through the authorized dealers in Illinois may reflect a connection between SSNA and the forum, they do not reflect any connection with the case at bar. *Cf. Eckelberger v. LG Chem, Ltd.*, No. 21-CV-906-NJR, 2023 WL 1928454, at *7 (S.D. Ill. Feb. 10, 2023) (LGCAI's contacts with Illinois 'relate to' Eckelberger's claims because LGCAI's contacts with Illinois involve sales of the very lithium-ion battery that allegedly led to Eckelberger's injury."). Put differently, Porter's claim that the bicycle she purchased from REI came with a defective front fork does not relate to SSNA's indirect sales of other after-market component parts in Illinois. Therefore, Porter has not met her burden of establishing a *prima facie* case of specific jurisdiction as to SSNA.

    c. Jurisdictional Discovery

As an alternative to dismissal, Porter requests leave to seek jurisdictional discovery. In order to obtain jurisdiction discovery, a plaintiff must first make a "colorable" showing of personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension*

*Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). "Generally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue, but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted." *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020) (citations omitted).

Porter first calls out SRS for not indicating how many of its component parts end up in Illinois and how much of its revenue is attributable to the sale of its parts in Illinois. But the affidavit makes clear that SRS does not have this information. SRS does not know how many of its parts end up in Illinois or how much of its revenue is connected to bicycle sales in Illinois because it does not have visibility into the supply chain past its sales to assemblers. *See* R. 45-1 ¶¶ 6–7, 9–12. Because there is no ambiguity, and Porter does not make out a colorable basis for personal jurisdiction over SRS, jurisdictional discovery on this issue is not warranted.

Porter also notes that SRS does not explain how its after-market component parts end up being sold by SSNA's authorized dealers. But SRS attests that it does not sell its products to retailers in Illinois and has not shipped its products to businesses in Illinois. R. 45-1 ¶¶ 22, 23. To the extent there is ambiguity, Porter does not explain how resolving it would make a difference here. Relatedly, Porter highlights a purported contradiction between SSNA's attestation that it "has no direct contractual relationship with any person or entity in Illinois" and its acknowledgment that there are three independent retailers in Illinois that sell SRS

13

parts and are identified as "authorized dealers" on SSNA's website. R. 23-2 ¶¶ 8, 9. Even if SSNA had direct contracts with those three retailers for the sale of SRS after-market parts, because Porter purchased her fully assembled bike from REI, and SSNA has never sold or serviced the front fork in Illinois, the Court would still not have specific jurisdiction over SSNA. Thus, jurisdictional discovery on this point would not change the result.

Lastly, Porter seeks discovery on SRS's level of control over SSNA. But since the Court finds that Porter's claims do not arise out of or relate to SSNA's Illinois contacts, imputing those contacts to SRS would not confer jurisdiction over SRS. Therefore, the Court declines to grant jurisdictional discovery.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part SRS's motion to dismiss [43] without prejudice and grants SSNA's motion to dismiss [23] without prejudice. If Porter believes she can set forth a plausible theory for personal jurisdiction over SRS and/or SSNA in an amended complaint, she may file an amended complaint and a redline comparison with her original complaint on or before December 15, 2023.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: November 22, 2023